IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
July 7, 2020 Session

## STATE OF TENNESSEE v. MARVIN MAURICE DEBERRY

**Appeal from the Circuit Court for Madison County**
**No. 19-177   Roy B. Morgan, Jr., Judge**
_____

### No. W2019-01666-CCA-R3-CD
_____

A jury convicted the Defendant, Marvin Maurice DeBerry, of driving after having been declared a motor vehicle habitual offender ("MVHO") and of three misdemeanor offenses not presented for appellate review. After his conviction but prior to his sentencing, an amendment to the statute that was the basis of his MVHO conviction went into effect, so that the Defendant's conduct was no longer criminalized and, concomitantly, triggered no penalty. The trial court, after initially sentencing the Defendant to serve five years, modified the Defendant's judgment to reflect that he was to be subjected to no penalty. On appeal, we are called to determine whether the Defendant may benefit from the savings statute in Tennessee Code Annotated section 39-11-112. We hold that the savings statute applies because Legislature's act of removing punishment for the offense constitutes a lesser penalty. Accordingly, we affirm the trial court's judgment reducing the Defendant's sentence.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

JOHN EVERETT WILLIAMS, P.J., delivered the opinion of the court, in which CAMILLE R. MCMULLEN and J. ROSS DYER, JJ., joined.

Herbert H. Slatery III, Attorney General and Reporter; Ronald L. Coleman, Assistant Attorney General; Jody Pickens, District Attorney General; and April Knight and Eric Wood, Assistant District Attorneys General, for the appellant, State of Tennessee.

George Morton Googe, District Public Defender; Brennan M. Wingerter (on appeal), Assistant Public Defender – Appellate Division; and Jeremy B. Epperson (at trial), Assistant Public Defender, for the appellee, Marvin Maurice DeBerry.

# OPINION

## FACTUAL AND PROCEDURAL HISTORY

The Defendant, who had a long history of motor vehicle offenses, was stopped for a malfunctioning brake light at 12:50 p.m. on May 29, 2018. While the trial transcript is not part of the record, the affidavit of complaint alleged that the Defendant was unable to provide proof of financial responsibility, was driving on a revoked license, had been declared an MVHO at the time, and also had a warrant for a violation of probation. The Defendant was indicted for driving after being declared an MVHO as of June 29, 2015; driving on canceled, suspended, or revoked license; violation of the financial responsibility law; and violation of the light law. On May 15, 2019, a jury found the Defendant guilty of all four offenses charged and imposed fines of $1,500 for the MVHO offense, $250 for driving on a revoked license, and $100 for violation of the financial responsibility law.

Meanwhile, on May 24, 2019, the Legislature approved a law removing the statutory provisions related to the MVHO offense and replacing them with a means to reinstate a license previously revoked pursuant to the MVHO statute. 2019 Tenn. Pub. Acts, ch. 486, § 3. The relevant portion of the change deleted the entirety of Tennessee Code Annotated, Title 55, Chapter 10, Part 6. *Id.* The Legislature substituted instead the following provision:

> A person whose driver license has been revoked or restricted due solely to the person's status as a motor vehicle habitual offender prior to July 1, 2019, may petition the court that originally made such a finding to reinstate the person's driver license. Upon receiving a petition for a reinstated driver license, the court shall determine whether the person's driver license was subject to revocation or restriction under prior law due solely to the person's status as a motor vehicle habitual offender and, if so, order the reinstatement of the person's driver license. The person may provide a copy of the court's order to the department of safety, which shall then reissue the person's driver license without restriction.

T.C.A. § 55-10-601 (Supp. 2019).

The trial court held a sentencing hearing on July 8, 2019, during which the Defendant testified, apparently consistently with his trial testimony, that he had been driving to work in order to provide for his family when he was stopped for the malfunctioning brake light. Defense counsel noted that since trial, the MVHO statute had been repealed and no longer provided for any penalty for driving after having been

- 2 -

declared an MVHO. Defense counsel argued that the savings statute in Tennessee Code Annotated section 39-11-112 should operate to reduce the Defendant's punishment and leave him with no penalty of incarceration, probation, or fine. The prosecutor argued that because the statute did not take effect until July 1, 2019, it had no bearing on the Defendant's case. The parties disagreed regarding whether the Defendant was required to be put into the Community Corrections program rather than probation, and the trial court concluded that it would order Community Corrections "[t]o be safe." After considering various enhancement and mitigating factors, and in particular putting weight on the Defendant's prior criminal record, which the court found included forty to forty-five misdemeanor and six felony offenses, the trial court sentenced the Defendant to five years as a Range III offender for the MVHO offense, with eleven months and twenty-nine days to be served in the jail and the remainder on Community Corrections. The Defendant received a sentence of six months for driving on a revoked license and was ordered to pay the jury-imposed fines for all offenses.

After the judgments were filed, the Defendant filed a "Motion for New Trial, Verdict of Acquittal, or Modification of Sentence," in which he again raised the argument that the savings statute would apply to his sentence and that he should accordingly benefit from the Legislature's decision to assign no penalty to the offense. The trial court held a hearing, and the Defendant argued that "no penalty is a lesser penalty," while the State argued that the Legislature's decision not to modify the penalty precluded the application of the savings statute to the punishment. The trial court observed that there had been a "substantial change in the legislature's attitude in looking at these things and hopefully keeping sober or drug-free people driving that need a license to work." The trial court determined that it would apply the savings statute, reasoning that the amendment to the MVHO statute, by providing for no penalty, provided for a lesser penalty. On the same basis, the trial court ordered the fine to be vacated.

The trial court also entered an "Order Granting Motion for Modification of Sentence" in which it elaborated on the basis of its amendment of the judgments. The court noted that the statute making it an offense to drive after having been declared an MVHO was repealed about two weeks after the Defendant's trial and prior to sentencing. Finding that "no penalty is a lesser penalty" under the savings statute, Tennessee Code Annotated section 39-11-112, the trial court ordered that the sentence and fine for the MVHO offense be vacated. The State appeals, arguing that the trial court erred in applying the savings statute to the Defendant's MVHO sentence.

- 3 -

# ANALYSIS

## I. Jurisdiction

The Defendant challenges the jurisdictional basis of the appeal. Jurisdiction is a question of law which we determine de novo. *State v. L.W.*, 350 S.W.3d 911, 915 (Tenn. 2011). The Defendant asserts that because the State's argument comprehends the assertion that the Defendant's sentence is illegal, the State was required to file a motion under Tennessee Rule of Criminal Procedure 36.1 and then appeal from any denial of the motion under Tennessee Rule of Appellate Procedure 3(c). The Defendant next asserts that that the trial court's modification of the sentence is not appealable under Tennessee Rule of Criminal Procedure 35 and that the State has no appeal as of right under Tennessee Code Annotated section 40-35-402(b)(1) because the sentence was not in the "wrong sentence range." The Defendant acknowledges that the trial court's reduction of the jury-imposed fine is appealable under Tennessee Code Annotated section 40-35-402(b)(5). The State responds that the sentence is properly appealable under both Tennessee Rule of Criminal Procedure 35 and Tennessee Code Annotated section 40-35-402(b)(1). We conclude that this court has jurisdiction to determine the issues raised on appeal.

We begin by observing that, while the ultimate issue on appeal certainly encompasses the trial court's imposition of an allegedly illegal sentence, the State is correct that the caselaw cited by the Defendant does not stand for the proposition that Rule 36.1 is the only avenue to challenge such a sentence. The Defendant cites to *Moody v. State*, in which the Tennessee Supreme Court held that a writ of certiorari was not properly available to a defendant seeking to challenge a trial court's denial of a motion to correct an illegal sentence because the writ was only available in the absence of a plain, speedy, or adequate remedy, which the defendant had in the form of a habeas corpus petition. 160 S.W.3d 512, 516 (Tenn. 2005). Because *Moody* was decided prior to the adoption of Rule 36.1, based on the statutory requirements of the writ of certiorari, and based on the statutory availability of the writ of habeas corpus, we conclude that it could not conceivably stand for the proposition that Rule 36.1 provides the only mechanism to challenge the imposition of an allegedly illegal sentence. *See id.*; T.C.A. §§ 27-8-101; 29-21-107; Tenn. R. Crim. P. 36.1 (effective July 1, 2013); *see also* Tenn. R. App. P. 3, Advisory Comm'n Cmt. [2013] ("With the adoption of [Rule 36.1 in 2013], this rule (Tenn. R. App. P. 3) was amended to provide for an appeal as of right, by either the defendant (see paragraph 3(b)) or the State (see paragraph 3(c)), from the trial court's ruling on a motion filed under Tenn. R. Crim. P. 36.1 to correct an illegal sentence."). The Defendant's citation to *State v. Brown*, likewise does not support the proposition that the State was required to file a separate Rule 36.1 motion in order to raise the issue. 479 S.W.3d 200, 209 (Tenn. 2015) (noting that Rule 36.1 differs from habeas corpus in part

by permitting the State to challenge an illegal sentence and that Tennessee Rule of Appellate Procedure 3 provides an appeal as of right from a trial court's decision on a Rule 36.1 motion).

Accordingly, although the State (or the Defendant) could certainly have filed a motion to correct an illegal sentence under Rule 36.1 to challenge the trial court's ruling, we conclude that the failure to do so does not foreclose appellate review so long as there exists a jurisdictional basis for the appeal. *See State v. Julie Fuller, a.k.a. Julie Cole*, No. W2013-00900-CCA-R3-CD, 2014 WL 1669958, at *1 (Tenn. Crim. App. Apr. 25, 2014) (concluding that the trial court erred in refusing to modify the defendant's sentence under Rule 35 when the original sentence was illegal); *see also State v. Roy Lee Sewell*, No. M2014-02060-CCA-R3-CD, 2015 WL 2393462, at *2 (Tenn. Crim. App. May 18, 2015) (reviewing the revocation of the defendant's probation and upholding the trial court's sua sponte correction of an illegal sentence during the revocation because "trial courts have the authority to correct an illegal sentence at any time, even if it has become final" (citing *State v. Burkhart*, 566 S.W.2d 871, 873 (Tenn. 1978), *superseded by statute on other grounds as stated in Brown*, 479 S.W.3d at 206)).

We turn then to the jurisdictional basis of the current appeal. The State has no right to appeal in a criminal prosecution "unless the right is expressly conferred by a constitutional provision or by statute." *State v. Meeks*, 262 S.W.3d 710, 718 (Tenn. 2008). A statute conferring a right of appeal to the State "will be strictly construed to apply only to the circumstances defined in the statute." *Id.*

Cognizant of the change in the MVHO statute, the Defendant filed a "Motion for New Trial, Verdict of Acquittal, or Modification of Sentence" in which he requested the trial court to modify his MVHO sentence from five years and a $1,500 fine to no penalty. The trial court was persuaded by the Defendant's argument that he should benefit from the intervening change to the statute. The court ultimately filed an "Order Granting Motion for Modification of Sentence" in which it explained that it was modifying the sentence because the savings statute required it to apply the new, lesser penalty. Tennessee Rule of Criminal Procedure 35 permits a trial court to reduce a sentence pursuant to a motion filed within the statutory period. Tenn. R. Crim. P. 35(a). Such a "modification" is limited to the imposition of only a sentence "the court could have originally imposed." Tenn. R. Crim. P. 35(b). Rule 35 also provides that "[i]f the court modifies the sentence, the state may appeal as otherwise provided by law." Tenn. R. Crim. P. 35(d). The Advisory Commission Comment to Rule 35 states, "If there is a modification, the state may appeal."

In *State v. Tolle*, the State appealed the trial court's application of the savings statue to reduce a defendant's sentence after the theft grading statute was amended to

provide lesser penalties. 591 S.W.3d 539, 540-41 (Tenn. 2019). The Tennessee Supreme Court concluded that the trial court had implicitly relied on Rule 35 in resentencing the defendant and that "Rule 35 expressly provides for a State appeal when the trial court modifies the sentence thereunder." *Id.* at 544. Accordingly, the Tennessee Supreme Court held that jurisdiction over the State's challenge to the application of the savings statute to reduce the sentence was proper under Rule 35. *Id.* We conclude that the case before us likewise demonstrates that the trial court was implicitly acting under Rule 35 in reducing the Defendant's sentence and that, under *Tolle*, Rule 35 conveys jurisdiction. The Defendant's perverse argument that the alleged lack of authority to impose the sentence renders it unappealable under Rule 35 misses the point of appellate review. The fact that the trial court allegedly exceeded its authority is in fact the error asserted on appeal. *See id.* (allowing the State to appeal based on its assertion that the trial court did not have the authority to reduce the defendant's sentence pursuant to the savings statute). If there were no basis for asserting error, we presume neither party would file a frivolous appeal. The existence of an error would not serve to defeat our jurisdiction.

Moreover, Tennessee Code Annotated section 40-35-402 provides that the State may appeal sentencing issues including the length of sentence and imposition of fines. T.C.A. § 40-35-402(b). The statute provides that the appeal should be limited to the grounds listed in subsection -402(b):

(1) The court improperly sentenced the defendant to the wrong sentence range;
(2) The court granted all or part of the sentence on probation;
(3) The court ordered all or part of the sentences to run concurrently;
(4) The court improperly found the defendant to be an especially mitigated offender;
(5) The court failed to impose the fines recommended by the jury;
(6) The court failed to order the defendant to make reasonable restitution; or
(7) The sentence is inconsistent with the purposes or considerations of sentencing set out in §§ 40-35-102 and 40-35-103.

T.C.A. § 40-35-402(b). In *State v. Menke*, the State sought to appeal the trial court's sentencing of the defendant under the amended theft grading statute. 590 S.W.3d 455, 456 (Tenn. 2019). The Tennessee Supreme Court concluded that the trial court's sentencing of the defendant necessarily implicated a determination both regarding the offense classification and regarding offender classification, and that the State could properly appeal these determinations under Tennessee Code Annotated section 40-35-402(b)(1). *Id.* at 464. Here, the State likewise asserts that the Defendant was sentenced

to the incorrect range. Accordingly, under *Menke*, this court has jurisdiction pursuant to Tennessee Code Annotated section 40-35-402(b).

## II. Application of the Savings Statute

The State asserts that the trial court erred in applying the savings statute and that it ultimately imposed an illegal sentence. The Defendant counters that the absence of a penalty under the amended statute is a lesser penalty such that the trial court properly applied the savings statute. We conclude that the absence of a penalty is a lesser penalty and removing penalties from the offense effectuates the intent of the Legislature. Accordingly, we affirm the trial court's judgment.

To determine whether the trial court properly applied the savings statute in reducing the Defendant's sentence, we must engage in statutory construction. The interpretation of a statute is a question of law reviewed de novo with no presumption of correctness. *State v. McNack*, 356 S.W.3d 906, 908 (Tenn. 2011); *see Tolle*, 591 S.W.3d at 544 (reviewing de novo a question of statutory interpretation which was the basis for the trial court's granting of a Rule 35 motion). "The most basic principle of statutory construction is to ascertain and give effect to legislative intent without broadening the statute beyond its intended scope." *Carter v. Bell*, 279 S.W.3d 560, 564 (Tenn. 2009). "We presume that every word in a statute has meaning and purpose and should be given full effect if the obvious intention of the General Assembly is not violated by so doing." *State v. Sherman*, 266 S.W.3d 395, 401 (Tenn. 2008). "Penal statutes are to be construed giving fair import of their terms in a way which promotes justice and effectuates the objectives of the criminal code." *Id.* (citing T.C.A. § 39-11-104 (2006)). When statutory language is clear, the court must apply the statute's plain meaning. *Id.* "When a statute is ambiguous, however, we may reference the broader statutory scheme, the history of the legislation, or other sources." *Id.* (citing *Parks v. Tenn. Mun. League Risk Mgmt. Pool*, 974 S.W.2d 677, 679 (Tenn. 1998)). "We are to construe 'in pari materia' those statutes relating to the same subject or having a common purpose." *State v. Edmondson*, 231 S.W.3d 925, 927 (Tenn. 2007) (citing *State v. Collins*, 166 S.W.3d 721, 726 (Tenn. 2005)). We presume the Legislature is aware of its own prior enactments and the state of the law at the time of the passage of legislation. *Id.* A statute is presumed to apply prospectively in the absence of clear legislative intent to the contrary. *Van Tran v. State*, 66 S.W.3d 790, 797-98 (Tenn. 2001).

The Defendant's conviction was the result of a violation of Tennessee Code Annotated section 55-10-616, which provided that "[a]ny person found to be an habitual offender under this part who thereafter is convicted of operating a motor vehicle in this state while the judgment or order of the court prohibiting such operation is in effect commits a Class E felony." T.C.A. § 55-10-616(b) (2018). On May 24, 2019, the

Legislature passed a law which provided that the entirety of Tennessee Code Annotated, Title 55, Chapter 10, Part 6 was deleted and replaced with language providing for a method of petitioning the court for a reinstatement of a license lost pursuant to the MVHO Act. 2019 Tenn. Pub. Acts, ch. 486, § 3. The parties dispute whether the Defendant can benefit from the change in the law.

## A. Effective Date

While the parties both assume that the effective date of the repeal of the previous version of the law is July 1, 2019, we note that the statute itself is less than clear regarding the effective date.

Section 15 of the law provides:

Section 3 of this act that authorizes a person whose driver license has been revoked or restricted prior to July 1, 2019, to petition a court for reinstatement of the person's driver license shall take effect thirty (30) days after the date upon which the commissioner of safety provides written notification to the secretary of state and the executive secretary of the Tennessee code commission that the department of safety's "A-list" driver license program is capable of implementing this act, or it shall take effect January 1, 2020, whichever is earlier, the public welfare requiring it. For all other purposes, this act shall take effect July 1, 2019, the public welfare requiring it.

2019 Tenn. Pub. Acts, ch. 486, § 15. The commissioner of safety sent the written notification required by Section 15 on October 15, 2019, informing the parties that the department was capable of implementing the law as of October 14, 2019, and the thirty day period was triggered for the remainder of the Act to take effect in November.

Section 3 includes both language deleting the entirety of Tennessee Code Annotated, Title 55, Chapter 10, Part 6 and language providing for a method of petitioning the court for a reinstatement of a license lost under the MVHO Act. 2019 Tenn. Pub. Acts, ch. 486, § 3. It is not clear from the statutory language of Section 15 if the entirety of Section 3, repealing the act and authorizing a petition to reinstate a license, has a delayed effective date under the statute or if the delayed effective date applies only to the authorization of petitions to reinstate a license with the repeal going into effect on July 1, 2019.

The February 24, 2019, fiscal memorandum's summary of amendment 004195 in the Senate summarized that the amendment "[d]eletes and replaces the effective date of

the bill such that the only substantive change is to change the effective date of the repeal of the Motor Vehicle Habitual Offenders Act to January 1, 2020." Senator John Stevens, speaking in the Senate Judiciary Committee on February 26, 2019, noted that amendment 004195 was based on the Department of Safety's need for extra time to update the system for the MVHO amendment and that the effective date of sections 1, 2, and 3 would be January 1, 2020. The Amendment itself provided that Sections 1, 2, and 3 would take effect January 1, 2020, while the remaining sections would take effect July 1, 2019. However, this language was subsequently changed in an amendment introduced in the Senate Finance, Ways, and Means Committee on April 24, 2019, which altered the language to that in the final bill. We conclude that this change indicates that the State Senate intended to change the effective date for only a portion of Section 3 in the final version of the legislation.

Furthermore, the fiscal memorandum's summary of amendment 005918 to House Bill 167 and amendments 005342 and 007440 to Senate Bill 403 describes the effect of the amendment as changing:

> the effective date of the authorization of a person whose driver license was revoked or restricted as a result of the Motor Vehicle Habitual Offender Act to petition a court for reinstatement of the person's driver license to 30 days after the date upon which the Commissioner of the Department of Safety provides written notification to the Secretary of State and the Executive Secretary of the Tennessee Code Commission that the Department's "A-list" driver license program is capable of implementing the act or January 1, 2020, whichever is earlier.

Representative William Gary Lamberth II in the House Judiciary Committee on March 13, 2019, noted that amendment 005342 was initiated by the Department of Safety and "just deals with reinstatement of license and gets the timing right for the department."

We observe that the Act itself provides for a petition for the reinstatement of a license lost under the MVHO Act "prior to July 1, 2019." Reading this phrase *in pari materia*, we conclude that the Legislature intended the repeal to go into effect on that date. The alternative reading, that the repeal would only become effective after written notification or January 1, 2020, would leave a subsection of defendants who would be subject to revocation of their license between July 1, 2019 and the effective date of the act but not eligible to petition for reinstatement. Such a result would be absurd, and this court must presume that the Legislature did not intend an absurdity. *Fletcher v. State*, 951 S.W.2d 378, 382 (Tenn. 1997). Accordingly, we conclude that the repeal became effective on July 1, 2019.

## B. Lesser Penalty

The Defendant's sentencing took place after the MVHO Act was repealed. The Defendant argued at sentencing that the savings statute should apply to reduce his available sentence, which was originally four to six years, to no penalty, and the trial court ultimately granted the Defendant's motion to modify his sentence on this basis. The State asserts on appeal that the amendment to the MVHO statute is governed by the first sentence of the savings statute, providing that the defendant should be prosecuted under the law in effect at the time of the offense, and that the section of the savings statute providing for the application of a lesser penalty does not apply because the penalty was not altered by the 2019 amendment to the MVHO statute. *See* T.C.A. § 39-11-112. The Defendant argues that no penalty is a "lesser penalty" under the statute. *See id.* After a review of the legislative history of the MVHO amendment, we are persuaded that the savings statute applies because no penalty is a lesser penalty.

Tennessee Code Annotated section 39-11-112, the savings statute, addresses "Repealed or amended statutes; prosecution." The statute provides:

> When a penal statute or penal legislative act of the state is repealed or amended by a subsequent legislative act, the offense, as defined by the statute or act being repealed or amended, committed while the statute or act was in full force and effect shall be prosecuted under the act or statute in effect at the time of the commission of the offense. Except as provided under § 40-35-117, in the event the subsequent act provides for a lesser penalty, any punishment imposed shall be in accordance with the subsequent act.

T.C.A. § 39-11-112.

Under the prior version of the MVHO Act, if the court found that the defendant was a habitual offender, it was required to "make an order directing that the person shall not operate a motor vehicle on the highways of this state and that the person shall surrender to the court all licenses to operate a motor vehicle upon the highways of this state." T.C.A. § 55-10-613(a) (2018). The Defendant here was declared a habitual offender and had accordingly lost the privilege of driving. At the time the Defendant was stopped for a malfunctioning light, the statute provided that "[a]ny person found to be an habitual offender under this part who thereafter is convicted of operating a motor vehicle in this state while the judgment or order of the court prohibiting such operation is in effect commits a Class E felony." T.C.A. § 55-10-616(b) (2018).

On May 24, 2019, the Legislature passed a law including the following language:

SECTION 3. Tennessee Code Annotated, Title 55, Chapter 10, Part 6, is amended by deleting the part and substituting instead the following:

A person whose driver license has been revoked or restricted due solely to the person's status as a motor vehicle habitual offender prior to July 1, 2019, may petition the court that originally made such a finding to reinstate the person's driver license. Upon receiving a petition for a reinstated driver license, the court shall determine whether the person's driver license was subject to revocation or restriction under prior law due solely to the person's status as a motor vehicle habitual offender and, if so, order the reinstatement of the person's driver license. The person may provide a copy of the court's order to the department of safety, which shall then reissue the person's driver license without restriction.

2019 Tenn. Pub. Acts, ch. 486, § 3.

We are called to interpret whether the phrase "lesser penalty" applies to the revised MVHO Act. The savings statute governs the prosecution of a defendant when the statute criminalizing his or her conduct has been amended, and it contemplates two situations. When a penal statute is repealed or amended, an offense committed while the statute was in effect "shall be prosecuted under the act or statute in effect at the time of the commission of the offense." T.C.A. § 39-11-112. However, there is an exception to the application of the prior law: "in the event the subsequent act provides for a lesser penalty," a defendant is entitled to the benefit of a lesser penalty. *Id.*

The Defendant asserts that the statutes are ambiguous and that we should therefore consult the legislative history of the amendment to the MVHO Act to determine whether the Legislature intended to impose a "lesser penalty." In support of the argument for ambiguity, the Defendant argues that the savings statute is ambiguous because the Tennessee Supreme Court recently addressed its application to an amendment to the statute delineating the gradation of theft offenses in three separate opinions. *Tolle*, 591 S.W.3d at 546; *State v. Keese*, 591 S.W.3d 75, 84 (Tenn. 2019); *Menke*, 590 S.W.3d at 470. We do not think that these cases stand for the proposition that either the savings statute or the MVHO amendment is inherently ambiguous. *See Tolle*, 591 S.W.3d at 546 (determining the proper application of the savings statute to resentencing pursuant to probation revocation); *Keese*, 591 S.W.3d at 84 (determining the application of the savings statute to a sentence imposed prior to the amendment's effective date); *Menke*, 590 S.W.3d at 468 (determining whether the theft grading statute was provided a lesser penalty).

- 11 -

Nevertheless, we conclude that the parties provide two reasonable statutory interpretations. The State asserts that the repeal of the law has decriminalized the offense and did not offer a lesser punishment. The Defendant asserts that the absence of a penalty is inherently a lesser penalty and that the Legislature intended the amendment to the MVHO law to provide a lesser punishment for MVHO offenders. We conclude that these interpretations are both reasonable, and accordingly, we turn to the legislative history. *See Powers v. State*, 343 S.W.3d 36, 50 n.20 (Tenn. 2011) (noting that, while an ambiguity cannot be manufactured by a nonsensical interpretation, two reasonable interpretations of a statute demonstrate an ambiguity).

Our review of the legislative history of the amendment to the MVHO statute demonstrates that the Legislature intended to provide for a decreased punishment. The law repealing the MVHO statute contained various other criminal reform measures, including decreased punishment for a failure to appear and increased punishment for theft of a firearm. *See* 2019 Tenn. Pub. Acts, ch. 486, § 4, 8. Senator Stevens described the law to the Senate Judiciary Committee by saying that it broadly "decreases some penalties for some things, but then it ends up increasing the penalties for others." In the category of decreased penalties, Senator Stevens listed the repeal of the MVHO Act. To the Senate Finance, Ways, and Means Committee, Senator Stevens summarized the history of the statute, noting that the original intent of the MVHO Act was to provide law enforcement with a tool for addressing multiple motor vehicle offenders but that laws prohibiting driving under the influence now provided sufficient penalties. He implied that circumstances similar to those under which the Defendant was charged supported the elimination of the MVHO penalties: "People are still driving, but now they are just driving illegally as they are trying to provide for their family…." He characterized the bill as "a reduction in the criminal code." Prior to the passage of the bill in the Senate, Senator Stevens reiterated that the new statute was intended to provide relief for those who, like the Defendant, "would just continue to drive illegally either going to work or something like that because they would have their license lost."

Likewise, in the Tennessee House of Representatives, Representative Lamberth indicated that "there are several offenses that are reductions in penalty as part of this bill, and then there are other important offenses … where there are increases in penalties." To the Judiciary Committee, he indicated that the law "moves some penalties down on a few crimes; it moves some others up." To the Finance, Ways, and Means Committee, he noted that the bill was meant to "alleviate some incarceration time" for some offenders while increasing it for others. Representative Lamberth likewise noted that the act was intended to reduce prison costs by reserving prison beds for "the worst of the worst" while lessening sanctions for other offenses.

- 12 -

From this legislative history, it is clear that the Legislature intended to impose a lesser penalty. We note in particular that the Legislature intended to provide relief for those in precisely the Defendant's circumstances: persons who had been declared habitual offenders but who continued to operate vehicles in an attempt to maintain gainful employment. This court must attempt to give effect to the Legislature's intent, *Carter*, 279 S.W.3d at 564, and we conclude that legislative history overwhelmingly demonstrates the desire of the Legislature to provide relief to those who would otherwise be subject to greater penalties under the MVHO statute.

We note that the Tennessee Supreme Court has previously given defendants the benefit of the lesser of two punishments when the alteration of a statute resulted in a lighter penalty. In *State v. Pearson*, the Tennessee Supreme Court concluded that, for an offender who committed an offense prior to the passage of the 1989 Sentencing Act but was sentenced after the effective date, the court "must calculate the appropriate sentence under both the 1982 statute and the 1989 statute, in their entirety, and then impose the lesser sentence of the two." 858 S.W.2d 879, 884 (Tenn. 1993). Likewise, in *Menke*, the Tennessee Supreme Court concluded that the amendment of the theft grading statute imposed a lesser punishment under the savings statute. *Menke*, 590 S.W.3d at 468. The *Menke* court concluded that "[u]nder the language of the Criminal Savings Statute, a clear legislative directive regarding retroactive application is not required for a defendant to benefit from the lesser punishment imposed by the subsequent act." *Id.* at 470 (citing Tenn. Code Ann. § 39-11-112). Here, we likewise conclude that, even in absence of a clear direction for retroactive application, the Defendant may benefit from the lesser punishment under the savings statute.

Implicitly proceeding under Rule 35, the trial court revisited its sentencing decision and modified the sentence in accordance with the savings statute. This court reviews a decision under Rule 35 for abuse of discretion. *Tolle*, 591 S.W.3d at 545. A trial court abuses its discretion when it applies an incorrect legal standard, reaches an illogical conclusion, bases its decision on a clearly erroneous assessment of the evidence, or employs reasoning that causes an injustice to the party complaining. *State v. Herron*, 461 S.W.3d 890, 904 (Tenn. 2015).

In modifying the sentence, the trial court noted that there had been a "substantial change in the legislature's attitude in looking at these things and hopefully keeping sober or drug-free people driving that need a license to work." We agree that the amendment to the statute reflects a change in legislative priorities regarding the MVHO offense. The trial court concluded that the savings statute applied to both the Defendant's sentence and to the fine that the court had previously levied. Because we determine that no penalty is a lesser penalty under the savings statute, we conclude that the trial court did not err in applying the lesser punishments to the Defendant's conviction. *See Amber Jones, et al., v.*

*Kent Coleman, et al.*, No. 3:16-CV-00677, 2017 WL 3025596, at *3 (M.D. Tenn. July 14, 2017) (concluding that the plaintiffs' claims were moot in part because the law they were challenging, under which they feared they could be fined for acts committed while the law was in place, had been repealed, and the new law provided no penalties), *aff'd sub nom. Jones v. Haynes*, 736 Fed. App'x 585 (6th Cir. 2018); *compare State v. Ariel Ben Sherman and Jacqueline P. Crank*, No. E2006-01226-CCA-R3-CD, 2007 WL 2011032, at **2, 4 (Tenn. Crim. App. July 12, 2007) (concluding the defendants could be prosecuted under a repealed statute despite their argument that zero punishment was a lesser penalty), *aff'd by Sherman*, 266 S.W.3d at 401 n.5 (noting that this court had concluded that the savings statute applied to preserve prosecution under the former version of the statute and observing that the issue was "not before this Court"). Accordingly, we affirm the trial court's determination that the Legislature's act of reducing the penalty to nothing constituted the imposition of a lesser penalty under the savings statute.

## CONCLUSION

Based on the foregoing reasoning, we affirm the trial court's modification of the sentence for the Defendant's MVHO conviction.

_____
JOHN EVERETT WILLIAMS, PRESIDING JUDGE